**SO ORDERED.**

**SIGNED this 14 day of October, 2008.**



_Dale L. Somers_
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

CHRISTOPHER MICHAEL HUGHES,

DEBTOR.

CASE NO. 08-11096-7
CHAPTER 7

# OPINION DETERMINING STAY RELIEF SHOULD BE GRANTED TO ALLOW CREDITORS TO PROCEED WITH STATE COURT LITIGATION TO LIQUIDATE THEIR CLAIMS AGAINST THE DEBTOR, INCLUDING THEIR CLAIMS FOR PUNITIVE DAMAGES

This matter is before the Court for a ruling on an amended stay relief motion filed by Creditors Bonnie Jean Brungardt Scott, surviving spouse of Jeffery Wade Scott, the estate of Jeffery Wade Scott by and through its administrator Bonnie Jean Brungardt Scott, Jeffrey Wagner, and Adam Stein (docket no. 22). The matter was argued at a

hearing on September 2, 2008. The Creditors appeared by counsel David G. Arst. The Debtor appeared by counsel Thomas J. Lasater. The Court has reviewed the relevant materials and considered counsels' arguments, and is now ready to rule.

The Creditors want stay relief so their claims against the Debtor, including claims for punitive damages, can be liquidated in state court. The Debtor wants the state court lawsuit limited by the extent of insurance coverage available to him, or at least limited to determining the amount of compensatory damages he might owe the Creditors, and wants any punitive damage litigation to proceed only before this Court. As explained below, the Court concludes the Creditors should be allowed to proceed in the state court to obtain judgments determining the amount of both compensatory and punitive damages, if any, the Debtor owes them, and also be allowed to recover on those judgments from any insurance coverage that may be available to pay the claims. They must, however, return to this Court to pursue claims that any judgments they may obtain are excepted from the Debtor's discharge and, so long as the stay remains in effect, to seek to recover from the Debtor personally or from the bankruptcy estate if any distributable assets should be discovered in the future.

**FACTS**

In July 2003, the Debtor was involved in an auto accident with several co-workers in which Jeffery Wade Scott was killed, and Jeffrey Wagner and Adam Stein were seriously injured. The accident occurred in Stafford County, Kansas. In 2004, Bonnie Jean Brungardt Scott, on her own behalf and as administrator of the estate of Jeffery

Wade Scott, sued the Debtor in a Kansas state court, seeking damages for his alleged negligence in connection with the accident. In 2005, Jeffrey Wagner and Adam Stein sued him in the same state court, seeking damages for the personal injuries they suffered. The suits have been consolidated at least for trial, if not for all purposes.

On May 14, 2008, the Debtor filed a Chapter 7 bankruptcy petition. According to the Debtor's attorney, workers compensation issues had arisen in the state court lawsuit that were resolved by an appeal.[1] The Debtor interpreted the appellate ruling to be in his favor, and mistakenly understood it to eliminate any liability he might have had to the Creditors. Consequently, he did not include them as creditors in his original bankruptcy papers, but only added them near the end of July. His bankruptcy filing was instead prompted by over $400,000 in medical bills he owed as a result of injuries he suffered in the accident. On July 7, the Chapter 7 trustee filed a report of no distribution and notice of intended abandonment, indicating the Debtor's creditors would receive nothing from his bankruptcy estate.

On August 13, two of the Creditors filed a motion for stay relief, seeking to proceed with the state court lawsuit. The same day, they filed a complaint seeking a determination that the Debtor's obligation to them was excepted from discharge under § 523(a)(9); the complaint was assigned Adversary No. 08-5167. The next day, both the motion and the complaint were amended to add the other two creditors as parties seeking

---

[1] *See Scott v. Hughes*, 281 Kan. 642 (2006).

relief. According to the motion, the state court lawsuit was scheduled for a jury trial beginning on September 15. At the Creditors' request, an expedited hearing on their motion was set for September 2.

In response to the motion, the Debtor agreed the parties should return to state court. He suggested the litigation should proceed there, however, only to the extent insurance coverage is available to pay damages to the Creditors because, he asserted, any compensatory damages that might be awarded beyond the insurance coverage are dischargeable in his bankruptcy case. Finally, he argued the Creditors should not be allowed to seek punitive damages from him in the state court suit. At the hearing, his attorney supported this last point by claiming that even if punitive damages are determined in the state court lawsuit, they will have to be tried again before this Court in Adversary No. 08-5167. In response to a question from the Court, the attorney said he had asked the Debtor's insurer whether it would defend the Debtor against the punitive damage claims (which are uninsurable in Kansas), but had not received an answer. The insurer is defending against the compensatory damage claims.

**DISCUSSION**

**1.     Automatic stay**

When the Debtor filed his bankruptcy petition, § 362(a)(1) of the Bankruptcy Code stayed the Creditors from pursuing their state court lawsuit against him. Under § 362(d)(1), the Court may grant the stay relief the Creditors seek if it concludes there is "cause" to do so. Whether to grant stay relief is committed to the discretion of

4

bankruptcy courts, based on all relevant circumstances. Even when the requirements for stay relief are satisfied, the Court may, in its discretion, deny it.[2] Congress did not specify when "cause" would exist for purposes of subsection (d)(1) so the stay should be lifted to allow litigation involving the debtor in a bankruptcy case to proceed in another forum, but Congress did intend for relief to be granted in such circumstances when appropriate.[3] In deciding whether "cause" has been shown, the Court must "balance the potential hardship that will be incurred by the party seeking relief if the automatic stay is not lifted, against the potential prejudice to the debtor and the debtor's estate."[4] When relief is sought to proceed with litigation in another forum, "[t]he relevant factors which the court must consider include judicial economy, trial readiness, the resolution of primary bankruptcy issues, the movant's chance of success on the merits, the costs of defense or other potential burdens to the estate, and the impact of the litigation on other creditors."[5] Minimizing the duplication of litigation in separate forums and promoting the efficient administration of the bankruptcy estate are proper concerns in deciding stay relief questions.[6]

---

[2]*In re Siciliano,* 167 B.R. 999, 1010 (Bankr. E.D. Pa. 1994).

[3]*Blan v. Nachogdoches County Hosp. (In re Blan)*, 237 B.R. 737, 739 (8th Cir. BAP 1999) (*citing* H.R. Rep. No. 95-595, at 341 (1977); S.Rep. No. 95-989, at 50 (1978)).

[4]*In re Paxson Electric Co.*, 242 B.R. 67, 70 (Bankr. M.D. Fla. 1999).

[5]*Bergman v. Wintroub (In re Wintroub)*, 283 B.R. 743, 745 (8th Cir. BAP 2002); *see Busch v. Busch (In re Busch)*, 294 B.R. 137, 141 (10th Cir. BAP 2003) (listing 12 factors).

[6]*Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 352 (9th Cir. 1996).

5

## 2. Punitive damages under Kansas law

Everything before the Court indicates Kansas law governs the Creditors' claims against the Debtor. "In Kansas, punitive damages are awarded to punish the wrongdoer for malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs. Punitive damages are not given upon any theory that the plaintiff has any just right to recover them, but are given only upon the theory that the defendant deserves punishment for his or her wrongful acts and that it is proper for the public to impose them upon the defendant."[7]

A Kansas statute, K.S.A. 60-3702, controls punitive damage awards in various ways. Subsection (a) provides that the trier of fact is to determine, concurrent with all other issues, whether punitive damages should be allowed, but if the trier of fact says yes, the court is to determine the amount in a separate proceeding. Subsection (c) provides that when punitive damages are sought, the plaintiff must prove by clear and convincing evidence in the initial phase of the trial that the defendant acted toward the plaintiff "with willful conduct, wanton conduct, fraud or malice." Subsection (b) identifies seven factors courts may consider in fixing the amount of punitive damages:

(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

(2) the degree of the defendant's awareness of that likelihood;

---

[7]*Hayes Sight & Sound, Inc., v. ONEOK, Inc.*, 281 Kan. 1287, syl. ¶¶ 11 & 12 (2006).

6

(3) the profitability of the defendant's misconduct;

(4) the duration of the misconduct and any intentional concealment of it;

(5) the attitude and conduct of the defendant upon discovery of the misconduct;

(6) the financial condition of the defendant; and

(7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.

A plaintiff seeking punitive damages will probably need to present evidence concerning most of these factors during the initial phase of the trial in order to convince the trier of fact that punitive damages should be allowed, although evidence of the defendant's financial condition and the deterrent effect of other sanctions imposed on the defendant might be excluded as irrelevant or overly prejudicial during that phase. In any event, so long as the same court presides over both phases of the trial, much less evidence will need to be presented during the punitive damage phase than if a different court presides over only that phase.

**3.    Applying the law to the facts of this case**

In this case, the parties agree at least one trial must be held so the Creditors' claims against the Debtor can be resolved. The Creditors want to litigate all aspects of their claims in one jury trial in the state court. The Debtor concedes some aspects of the claims should be tried there, but contends even if the punitive damage claims were tried there, they would have to be tried a second time before this Court. After considering the

7

circumstances, the Court concludes judicial economy and trial readiness, coupled with the secondary nature of the Creditors' assertion their claims are not dischargeable and the absence of any impact on the bankruptcy estate or the Debtor's other creditors, establish that the claims for compensatory and punitive damages should all be determined in the state court lawsuit.

Clearly, judicial economy can be better served by having all the Creditors' damage claims decided before one court. Most, if not all, of the evidence that will be presented to try to establish the compensatory damage claims would have to be presented again if a different court were asked to fix the amount of punitive damages to allow under K.S.A. 60-3702. Just as clearly, the one court where the claims should be decided is the state court. Kansas state district courts regularly handle personal injury negligence cases arising out of automobile accidents (while this Court does not), and have the qualifications and experience to do so. They are more likely than this Court to have experience determining the amount of punitive damages under K.S.A. 60-3702(b). This case was scheduled to be tried to a jury in the state court, and any issues tried instead before this Court (except for fixing the amount of any punitive damage award) would have to be tried to a jury unless all the parties agreed to a bench trial. Kansas state courts regularly preside over jury trials, but this Court does not. Resolving the Creditors' damage claims against the Debtor requires none of this Court's special expertise in dealing with questions that arise only or most often in bankruptcy cases. The dischargeability of the Creditors' claims comes within the Court's routine experience, but

8

will only have to be determined if the Creditors succeed in proving the Debtor is liable to them; if they fail, the dischargeability question will evaporate. Furthermore, when the Debtor filed for bankruptcy, two of the Creditors' claims had already been pending in state court for at least three years, and the other Creditors' claims had been pending there for at least two. The trial was scheduled to take place just four months after the Debtor filed, so the parties must have completed most of their trial preparation by then, and the state court was prepared to proceed with the trial.

The Court cannot agree with the Debtor that a second trial on punitive damages will be required in Adv. No. 08-5167 if those claims are decided before the state court. The question whether the Creditors are entitled to judgments for compensatory and punitive damages against the Debtor is not the same as the question whether such damages should be excepted from his discharge. However, issue preclusion (or collateral estoppel) often applies in dischargeability actions after a state court judgment has determined whether a debtor is liable to a creditor.[8] So long as the parties make sure the state court jury verdict is sufficiently clear,[9] issue preclusion should prevent any need to relitigate any punitive damage questions before this Court in Adversary No. 08-5167.

---

[8] *See Marrese v. v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379-86 (1985) (through issue preclusion, state court judgment could prevent relitigation of questions in later federal suit); *see also Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979) (state court determination of factual issues under standards identical to dischargeability standards contained in Bankruptcy Code could bar relitigation of those issues in bankruptcy court).

[9] Since the Creditors contend the Debtor's obligation to them is excepted from discharge under 11 U.S.C.A. § 523(a)(9), the jury might be asked to answer a special question (assuming there was evidence to support it) whether the Creditors' damages were caused by the Debtor's unlawful operation of a motor vehicle while he was intoxicated from using alcohol, a drug, or another substance.

9

In addition, the Supreme Court's decision in *Cohen v. de la Cruz*[10] indicates § 523(a)(9) must be read to except from discharge any liability imposed on a debtor for causing death or personal injury while unlawfully operating a motor vehicle while intoxicated, whether the liability is for compensatory damages, punitive damages, or both. If the Creditors' claims for punitive damages would have to be tried again before this Court even after they have been decided in the state court, *Cohen* would mean their claims for compensatory damages would likewise have to be tried again here. In other words, *Cohen* indicates the Debtor's concession that the compensatory damage claims may be tried in the state court conflicts with his argument that the punitive damage claims should not be because they will have to be tried here anyway. Either both types of claims would have to be relitigated here or neither of them would have to be.

Because the Debtor's bankruptcy estate has no assets, the estate's trustee has no reason to contest the Creditors' claims and the estate will incur no costs in the state court lawsuit. Similarly, resolution of the Creditors' claims will not affect the Debtor's other creditors, except in the unlikely event estate assets are discovered in the future. Even the Debtor would have little or no reason to contest the Creditors' claims if they were not seeking to have them excepted from his discharge.

In the state court, the Debtor is being represented by an attorney hired by his insurance company to defend against the Creditors' claims. In the course of defending

---

[10]523 U.S. 213, 217-23 (1998) (ruling § 523(a)(2)(A)'s fraud exception to dischargeability covers not only compensatory damages, but also awards authorized by a state statute of treble damages, attorney fees, and costs).

against the claims for compensatory damages during the initial phase of the trial, that attorney will probably also provide at least a minimal defense to the claims for punitive damages. That defense should not add significantly to the company's defense costs during that phase. The insurance company might not defend the Debtor if further proceedings are required for the court to determine the amount of punitive damages to allow, but if the punitive damage claims were left entirely to be tried before this Court, the insurance company would almost certainly pay, up to the limits of the Debtor's policy, any compensatory damages awarded by the state court and provide no attorney to defend the Debtor here on the punitive damage claims, shifting the full defense burden to the Debtor.

**CONCLUSION**

For these reasons, the Court concludes the Creditors should be granted stay relief to have all their claims against the Debtor, including those for punitive damages, tried in the state court. The relief granted applies to both phases of the trial called for by K.S.A. 60-3702. The Creditors will be authorized to collect any judgments they may obtain only from the Debtor's insurance company and only to the extent his policy provides coverage. Otherwise, so long as the stay remains in effect, the Creditors will be required to return to this Court to pursue their dischargeability claims or to seek permission to enforce any judgments against the Debtor and any other assets he may have. Proceedings on the Creditors' dischargeability complaint, Adv. No. 08-5167, will be stayed pending resolution of the state court lawsuit or further order of this Court.

11

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.

# # #